### In re MELON PRODUCE, INC., Debtor.

### Joseph BRAUNSTEIN, Trustee, Plaintiff,

v.

### Peter KARGER, Defendant.

### Civ. A. No. 90–11853–H.

United States District Court, D. Massachusetts.

Jan. 8, 1991.

---

James Steven Franchek, Alan Louis Braunstein, Jeffrey Marc Friedman, Riemer & Braunstein, Boston, Mass., for plaintiff.

Alan M. Spiro, Friedman & Atherton, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

Plaintiff Joseph Braunstein (the "Trustee") is the duly appointed bankruptcy trustee for Melon Produce, Inc. ("Melon"), pursuant to the filing of an involuntary bankruptcy petition under Chapter 7. The petition was filed on January 27, 1988. Defendant Peter Karger ("Karger") was the President and sole shareholder of Melon. The Trustee filed this bankruptcy action seeking to avoid and recover certain alleged preferential and fraudulent transfers. Upon motion by the Defendant Karger for a jury trial in this matter, the case was transferred to this Court.

The case now comes before the Court upon the Trustee's Motion for Summary Judgment on the preference claim contained in Count I of the Trustee's Amended Complaint. The Trustee seeks to avoid an alleged preferential transfer and to recover the sum of $430,022.39 from Karger. Karger has filed a Cross–Motion for Summary Judgment on Count I. The Court has reviewed the documents filed in this case and has considered the oral arguments made by counsel. For the reasons set forth below, the Court rules that the Trustee's Motion for Summary Judgment should be granted.

*Undisputed Facts*

On August 3, 1984, Karger made a series of loans totalling $632,000.00 to A. Pelligrino & Son, Inc., a company undergoing reorganization under Chapter 11. Karger executed three promissory notes, in the amounts of $100,000.00, $232,000.00, and $300,000.00, respectively, under which A. Pelligrino & Son agreed to repay Karger the principal sum with interest. On Au-

gust 7, 1984 Melon guaranteed the $300,000.00 obligation of A. Pelligrino & Son and executed a security agreement with Karger under which it secured this guaranty. The security agreement granted Karger an interest in certain personal property of the Debtor Melon.

On February 11, 1987 Melon authorized the sale of its only existing assets—a lease in New England Produce Center, Inc. (the "NEPC Lease"), and two shares of stock in New England Produce Center, Inc. (the "NEPC Stock"). The NEPC Lease and the NEPC Stock were sold for $470,000.00. At the closing of the sale on February 27, 1987, Melon received two checks in the aggregate amount of $430,022.39. Melon then paid Karger these proceeds. Melon endorsed the two checks, and Karger's agent deposited them into Karger's account. At the time of this transaction, Melon's liabilities, including a debt to Karger [1] and $342,108.11 in debts owed to twenty-five other creditors,[2] exceeded its assets by more than $300,000.00.

## DISCUSSION

The Trustee argues that the payment of the $430,022.39 to Karger from the proceeds of the sale of the NEPC Lease and NEPC Stock constituted a "preferential transfer" under the Bankruptcy Code. The Bankruptcy Code provides, in pertinent part, that a trustee may avoid as a "preference" any transfer of an interest of the debtor:

1. to or for the benefit of a creditor;
2. for or on account of an antecedent debt owed by the debtor before such transfer was made;
3. made while the debtor was insolvent;
4. made between ninety days and one year before the date of the filing of the petition, if such creditor at the time of the transfer was an insider; and
5. that enables such creditor to receive more than such creditor would receive under Chapter 7 had the transfer not been made.

*See* 11 U.S.C. § 547(b). The Trustee contends that he has satisfied these five elements of a preference claim and, thus, that he is entitled to avoid the transfer and to recover the monies paid to Karger.

In particular, the Trustee asserts that Melon paid $430,022.39 from the proceeds of the sale of the NEPC Lease and the NEPC Stock to Karger to satisfy an existing unsecured debt owed to Karger. He further asserts that Karger, as sole shareholder and director of Melon, was an "insider," and that the money was transferred to him on February 27, 1987, within one year of the filing of the bankruptcy petition. At this point in 1987, Melon was insolvent. As a result of the transfer, the Trustee suggests, Karger received more than he otherwise would have under a Chapter 7 distribution in which the proceeds of the sale would have been distributed among all of Melon's unsecured creditors.

■ Karger apparently agrees that the Trustee has satisfied his burden of establishing at least three of the elements of his preference claim. In particular, Karger does not dispute that he was a creditor of Melon and that he received the payment in question in satisfaction of an antecedent debt owed to him. He also does not contest that the transfer occurred within the statutory preference period of one year. Moreover, Karger does not identify any material factual disputes as to the other

---

**1.** The Court notes that the source of the debt to Karger is unclear. Karger in his deposition suggests that he loaned $500,000.00 to Melon and that it was this debt which Melon sought to repay. (Karger Deposition at 2–44). Karger's memorandum filed in connection with his Cross–Motion for Summary Judgment states that Karger was owed $510,610.00, although the source of that debt is not set forth in the pleadings. (Defendant's Memorandum at 5). Finally, during oral argument, Karger's counsel indicated that the money paid to Karger constituted payment on Melon's guaranty in the amount of $300,000.00, plus interest. Despite these discrepancies, both parties agree that Melon owed Karger at least $430,000.00 at the time of the transfer. The Court, therefore, will accept as true the parties' representation that a debt to Karger existed as of February 27, 1987.

**2.** These creditors have filed Proofs of Claims, and no objections have been filed to these Proofs of Claims.

elements which would otherwise preclude entry of summary judgment. *See* Fed.R. Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Though Karger's opposition to the Trustee's motion argues that the Trustee has failed to prove insolvency of Melon (Defendant's Opposition, pp. 15–17), the Court considers the twenty-five uncontested Proofs of Claims as sufficient evidence of existing liabilities to establish insolvency. *See In re Pinto,* 98 B.R. 200, 208 n. 3 (Bkrtcy.E.D.Pa.1989). Karger sets forth no specific facts which call into question the validity of these claims, nor does he offer any evidence from which a jury might infer that Melon was solvent.

For purposes of this summary judgment motion, therefore, the Court finds that no genuine *factual* dispute exists with respect any of the elements of the Trustee's claim. However, Karger raises one issue which requires the Court to resolve a discrete question of law. In particular, Karger argues that the payment to him cannot be considered preferential because he was a *secured* creditor. As a secured creditor, Karger asserts that he would have had priority over Melon's other unsecured creditors and, thus, that he received no more than the amount to which he otherwise would have been entitled under a Chapter 7 distribution. The Court, then, must examine the terms of the August 7, 1984 security agreement (the "Agreement) between Melon and Karger to determine whether, at the time of the transfer, Karger was, as the Trustee argues, an *unsecured* creditor, or whether he was a *secured* creditor.

■ The Agreement provides, in relevant part, that Karger would retain a security interest in:

the personal property of [Melon] ... whether now existing or hereafter acquired or arising, and any and all additions, substitutions, accessions, proceeds

and products thereto or thereof (all of the same being hereinafter called the "Collateral").

The Agreement further defines the collateral as:

[a]ll accounts and accounts receivable and all other rights to payment for goods sold or leased or for services rendered, all sums of money or other proceeds due or become due thereon, all instruments pertaining thereto, and all guarantees and security therefor; *all other rights to the payment of money* ... all interest of [Melon] in goods as to which an amount receivable for goods sold or leased has arisen, all contract rights, all chattel paper, *instruments,* documents, general intangibles, and books and records ... (emphasis added).

Based upon these provisions, Karger claims a security interest in the "instruments"—the two checks—that Melon received upon the sale of the NEPC Lease and the NEPC Stock. He also contends that he properly perfected that interest by taking possession of the instruments.

■ The Court is willing to accept Karger's argument that the Agreement intended to grant to him a security interest in Melon's "instruments," including the two checks that Melon received from the sale of its lease and stock,[3] but the Court does not believe that the argument improves Karger's position with respect to the Trustee's motion. The Trustee may still establish the elements of a preferential transfer even where the "transfer" is the perfection of a security interest. *See, e.g., In re Taco Ed's, Inc.,* 63 B.R. 913, 925 (Bkrtcy.N.D.Ohio 1986) (holding that "it is well established" that perfection of a security interest may be avoided under Section 547).

The Massachusetts Commercial Code recognizes a security interest in negotiable instruments *only* after the secured party

**3.** The Court agrees with the Trustee that Karger did not possess a security interest in Melon's leaseholds or stock or any proceeds therefrom. The Agreement expressly refers to an interest in the "personal property" of the debtor which, under Massachusetts law, would not include interests in the proceeds from the sale of the NEPC Lease or the NEPC Stock. Karger's only contrary authority on this issue is a case governed by Florida law, which is not binding on this Court.

has taken possession of those instruments. *See* Mass.Gen.L. ch. 106, § 9–304 (stating that a security interest in an instrument is perfected only by possession). At all times prior to that party's taking possession, the party merely possesses an unperfected security interest, entitling him to no greater priority than an unsecured party. Thus, in this case, Karger first attained a perfected security interest on February 27, 1987, the date on which his agent took possession of the checks. Only on February 27 did Karger earn the priority rights associated with the status of a secured creditor.

Bankruptcy law, however, enables the Trustee to avoid the very situation whereby one creditor improves his position, to the detriment of the other unsecured creditors, just prior to bankruptcy. *See In re Wegner*, 61 B.R. 414, 421 (Bkrtcy.D.Mont.1986); *In re Phillips*, 24 B.R. 712, 715 (Bkrtcy.E. D.Cal.1982). The Trustee's power to set aside preferential transfers invalidates these transactions and restores equality among creditors. Certainly the perfection of Karger's security interest placed Karger in a better position vis-à-vis Melon's other unsecured creditors. Because the perfection occurred within the statutory one-year preference period for insiders, this perfection, itself, is a voidable preference under Section 547.

The Court finds that no material factual disputes exist in this case and that the Trustee is entitled to judgment as a matter of law. Thus, the Court hereby grants the Trustee's Motion for Summary Judgment on the preference claim contained in Count I.

SO ORDERED.